JUL 2 3 2002
ECD

U.S. FILED-CLERK
DISTRICT COURT
02 JUL 22 PM 4: 19
TX EASTERN-BEAUMONT
BY BC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IVAN RAY MURPHY, JR., Petitioner | § | |
| | § | |
| vs. | § | No. 1:01cv772 |
| | § | |
| JANIE COCKRELL, Director, Texas Department of Criminal Justice, Institutional Division, Respondent | § § § | |

## MEMORANDUM OPINION

Petitioner Ivan Ray Murphy ("Petitioner"), an inmate confined to the Texas Department of Criminal Justice, Institutional Division, filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Murphy challenges his capital murder conviction and death sentence imposed on October 26 and 27, 1990, respectively, in the 336th Judicial District Court of Grayson County, Texas in cause number 38,613, styled *The State of Texas v. Ivan Ray Murphy, Jr.*

On the night of January 9, 1989, Petitioner and Douglas Stoff went to the home of Lula Mae Denning in Denison, Texas. Ms. Denning, an eighty-year-old lifetime friend of Petitioner's, invited the two men into her home. Once inside, the two men robbed Ms. Denning of her jewelry, beat her to unconsciousness, and left her for dead. They returned several hours later to steal more jewelry that they could sell for more drugs.[1]

Petitioner was convicted of capital murder on October 26, 1990. On October 27, the jury answered the Texas statutory special issues in such a way that the trial court sentenced Petitioner to death. The Texas Court of Criminal Appeals affirmed Petitioner's conviction and sentence on September 29, 1993. *Murphy v. State*, No. 71,180 (Tex.Crim.App. September 29, 1993).

---

[1] These facts are taken from the Fifth Circuit Court of Appeals' opinion in *Murphy v. Johnson*, 205 F.3d 809, 812 (5th Cir.), *cert. denied*, 531 U.S. 957 (2000).

Petitioner's

Motion for Rehearing was denied by that court on January 26, 1994. Petitioner then filed a writ of *certiorari* with the United States Supreme Court, which was denied on October 11, 1994. *Murphy v. Texas*, 513 U.S. 926 (1994). On October 30, 1995, Petitioner filed a state application for post-conviction relief, together with a request for an evidentiary hearing and a motion for discovery. The trial court recommended that relief be denied, and further found that an evidentiary hearing was unnecessary. The Texas Court of Criminal Appeals adopted the trial court's recommendation and denied relief on February 28, 1996. *Ex parte Murphy*, No. 30,035-01 (Tex.Crim.App. February 28, 1996). On December 16, 1996, Petitioner filed his first federal writ application, along with a motion for evidentiary hearing and a motion for discovery. On August 19, 1997, this Court denied relief. Pursuant to a Certificate of Appealability, Petitioner appealed the denial of relief to the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed the denial of relief on March 2, 2000. *Murphy v. Johnson*, 205 F.3d 809 (5th Cir.), *cert. denied*, 531 U.S. 957 (2000).

Petitioner filed a successive application for post-conviction relief in state court on June 2, 2000. On April 30, 2001, the trial court recommended that relief be denied, and on June 20, 2001, the Texas Court of Criminal Appeals adopted the trial court's recommendation and denied relief. *Ex parte Murphy*, No. 30,035-02 (Tex.Crim.App June 20, 2001). On June 5, 2001, Petitioner filed a second successive application for post-conviction relief. On September 12, 2001, the Texas Court of Criminal Appeals determined that Petitioner's application failed to satisfy the requirements of Tex.Code Crim.Proc.Ann. art. 11.071, § 5(a), and dismissed the application as an abuse of the writ. *Ex parte Murphy*, No. 30,035-03 (Tex.Crim.App. September 12, 2001). On September 25, 2001, Petitioner requested authorization from the Fifth Circuit,

pursuant to 28 U.S.C. § 2244(b)(3), to file a successive petition for relief in this Court. The Fifth Circuit granted authorization on October 30, 2001. Petitioner's second petition for relief was filed with this Court on November 5, 2001.

Petitioner raises five grounds for relief:

1) His Sixth, Eighth, and Fourteenth Amendment rights were violated by the trial court's failure to provide a mitigation vehicle question to the jury;
2) His due process rights were violated because his conviction and sentence were the result of the prosecutor's use of perjured testimony from witness Michael McGregor;
3) His due process rights were violated because he is factually innocent as established by "newly discovered evidence" that witness Michael McGregor gave perjured testimony at trial;
4) He was denied due process as a result of prosecutorial misconduct when the prosecutor failed to disclose exculpatory evidence of agreements with witness Michael McGregor; and
5) His due process and Eight Amendment rights were violated by the imposition of the death penalty in an arbitrary and capricious manner due to the jury's consideration of the testimony of witness Michael McGregor.

28 U.S.C. § 2244(b) provides

(b)(1) A claim presented in a second or successive *habeas corpus* application under section 2254 that was presented in a prior application shall be dismissed.
   (2) A claim presented in a second or successive *habeas corpus* application under section 2254 that was not presented in a prior application shall be dismissed unless
      (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or
      (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
         (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Because this is a successive writ application, the Court will apply § 2244(b) to Petitioner's claims.

In his first claim, Petitioner argues that his constitutional rights were violated because the jury did not have a vehicle to express its response to mitigating evidence of his drug and alcohol abuse offered by defense counsel. Petitioner relies on the United States Supreme Court's opinion in *Penry v. Lynaugh*, 492 U.S. 302 (1989) (*Penry I*) and *Penry v. Johnson*, 121 S.Ct. 1910 (2001) (*Penry II*).

*Penry I* involved a challenge to the pre-1994 version of Texas' sentencing statute, Tex.Code Crim.Proc.Ann. art. 37.071. Penry alleged that art. 37.071 instructions did not allow the jury to consider evidence of his mental retardation and childhood abuse mitigating with respect to punishment. The Court in *Penry I* analyzed the special issues the jury was required to answer and held that "in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused background by declining to impose the death penalty, we conclude that the jury was not provided with a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision." *Penry I*, 492 U.S. at 328. Penry was retried, convicted of capital murder, and again sentenced to death. Attempting to comply with *Penry I*, the trial court gave a supplemental instruction to the jury at the punishment phase directing them to give effect to any mitigating circumstances. The Court in *Penry II*, however, found that this instruction still failed to satisfy its mandate is *Penry I*. *Penry II*, 121 S.Ct. at 1920.

Petitioner points out that the supplemental instruction given to the jury in *Penry II* is identical to the one that the trial court gave the jury in his case. Accordingly, as in *Penry II*, the instruction failed to allow the jury to give effect to evidence of Petitioner's drug and alcohol abuse. In *Madden v. Collins*, 18 F.3d 304 (5th Cir. 1994), *cert. denied*, 513 U.S. 1156 (1995), the Fifth Circuit set forth a two-step procedure for analyzing *Penry* claims. The Court must

4

determine first "that the proffered evidence was constitutionally relevant mitigating evidence, and, if so, second, that the proffered evidence was beyond the 'effective reach' of the jurors." *Id.* at 308.[2]

In determining whether evidence is "constitutionally relevant," the inquiry for the Court is whether "the evidence implicate[s] the basic concern of *Penry* 'that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.'" *Id.* at 307. The Fifth Circuit has explained that "[i]n order to present relevant evidence that one is less culpable for his crime, the evidence must show (1) a 'uniquely severe permanent handicap [ ] with which the defendant was burdened through no fault of his own,' and (2) that the criminal act was attributable to this severe permanent condition." *Davis v. Scott*, 51 F.3d 457, 460-61 (5th Cir.), *cert. denied*, 516 U.S. 992 (1995); *see also Tennard v. Cockrell*, 284 F.3d 591, 595 (5th Cir. 2002).

Petitioner claims that his "mental faculties were retarded due to abuse of drugs and alcohol." The Fifth Circuit, however, held in *Barnard v. Collins*, 958 F.2d 634, 639 (5th Cir. 1992), *cert. denied*, 506 U.S. 1057 (1993), that "voluntary intoxication is not the kind of 'uniquely severe permanent handicap[ ] with which the defendant was burdened through no fault of his own' that requires a special instruction to ensure that the mitigating effect of such evidence finds expression in the jury's sentencing decision." *See also Cordova v. Collins*, 953 F.2d 167, 170 (5th Cir.), *cert. denied*, 502 U.S. 1067 (1992) (in contrast to permanent disability of petitioner in *Penry*, petitioner's voluntary intoxication was transitory or temporary condition).

---

[2] *Penry II* does not change this analysis. *See Dinkins v. Cockrell*, No. 01-40500 (5th Cir. March 28, 2002).

Furthermore, defense testimony that Petitioner was non-violent when he was not abusing drugs and alcohol belies the requirement that constitutionally relevant evidence is a "severe permanent handicap with [ ] which he is burdened through no fault of his own." In light of the foregoing case law, Petitioner's evidence of his drug and alcohol abuse is not constitutionally relevant, and therefore does not qualify as *Penry* evidence. Respondent's motion for summary judgment will be granted as to Petitioner's first claim.

In his second and third claims, Petitioner contends that his constitutional rights were violated by the prosecution's use of perjured testimony from witness Michael McGregor and by the prosecution's failure to disclose evidence of a deal in exchange for McGregor's testimony. In his fourth claim, Petitioner states that he is factually innocent as established by "newly discovered evidence" that witness McGregor gave perjured testimony at trial. Petitioner asserts that absent McGregor's testimony, which provided the only evidence that Petitioner struck the victim, Petitioner would be ineligible for the death penalty. In his fifth claim, Petitioner argues that his death sentence violates due process and the Eighth Amendment because the jury was able to consider McGregor's perjured testimony, which McGregor later recanted.

In support of his claim that McGregor's testimony was false, Petitioner relies primarily upon affidavits from his *habeas* counsel. According to an affidavit dated March 22, 2000, when Petitioner was a pre-trial cell mate of McGregor, Petitioner told McGregor that he was at the victim's house at the time of the murder. Petitioner went outside the victim's house to get the newspaper and when he returned, Stoff was "on the old lady." McGregor said that was all Petitioner told him about the crime. McGregor was later transferred to another cell and, as a result of various events, became angered with Petitioner. McGregor told counsel that he decided to get even with Petitioner by lying to authorities about Petitioner's involvement in the crime.

6

When word got to authorities that McGregor had incriminating information about Petitioner, the prosecutor asked McGregor what he wanted in exchange for a statement about Petitioner's involvement in the crime. McGregor told the prosecutor that he wanted all of his charges dropped, and that it was understood that would happen if McGregor testified. After McGregor testified, all of his pending charges were, in fact, dropped.

In another affidavit by counsel, dated October 7, 1999, counsel discusses the content of an October 11, 1996 meeting with McGregor at the Oklahoma State Penitentiary. From his conversation with McGregor, counsel testified that he felt "that [McGregor] was telling us that his trial testimony was false, and that the prosecutor well knew this."

As evidence that the prosecution was in the habit of dismissing charges in exchange for perjured testimony, Petitioner offers a letter written by Cynthia Baxter to Judge Perkins of the 59th District Court in Sherman wherein Baxter claims authorities told her she would be freed from jail and the charges against her dropped if she testified that she was with Stoff and Petitioner at the time of the murder.

Finally, Petitioner offers the affidavit of Bobby James, dated February 8, 2000. James testified that in 1989, McGregor told him that he did not like Petitioner and "would do what he had to, to get back at him." James also stated that in August or September of 1992, he made McGregor angry and that McGregor threatened to "do to [James] what he did to [Petitioner]" and lie at trial to make sure James served jail time.

It is not clear to the Court whether Petitioner's second, third, fourth, and fifth claims were presented in his initial federal writ. If they were raised in his initial writ, this Court would have to dismiss the claims. *See* 28 U.S.C. § 2244(b)(1). Assuming the claims were not raised, this Court can consider the claims in this successive petition only if Petitioner shows that the

7

claims rely on a new rule of constitutional law or that the factual predicates for the claims could not have been discovered previously through the exercise of due diligence and that the facts underlying the claims would be sufficient to establish that, but for constitutional error, no reasonable factfinder would have found Petitioner guilty of the underlying offense. *See id.* at (b)(2)(B)(i) and (ii).

Petitioner has not shown that his second, third, fourth, and fifth claims rely on a new rule of constitutional law. Indeed, the law that Petitioner raises in his claims regarding perjured testimony, deal making, and "newly discovered evidence" involve well established principles. As such, the "new rule of constitutional law" exception for consideration of unraised claims is not applicable to Petitioner's second through fifth claims.

Petitioner has also failed to show that the factual predicates for his claims could not have been discovered through the exercise of due diligence. Petitioner's own evidence submitted in support of his claims bares this out. Counsel's October 7, 1999 affidavit shows that as of October 1996, two months prior to Petitioner's first writ being filed, counsel believed McGregor had committed perjury, and that the prosecutor was aware of this fact. Furthermore, the motions to dismiss the charges against McGregor were signed in either November 1990 or August 1991. Stamps certifying the copies of the motions bear a September 1996 date, which presumably demonstrates that counsel had knowledge of the dismissals prior to the filing of Petitioner's first federal writ in December 1996. Baxter's letter is dated August of 1994, years prior to the filing of Petitioner's first federal writ, and James' affidavit references events occurring in 1989 and 1992. Defense counsel at trial was even aware of the theory of the existence of a deal between the prosecution and McGregor. In his closing argument, defense counsel argued that the prosecution made a deal with McGregor in exchange for his testimony and stated that McGregor

8

"admitted that he sat over there in the jail, 'I will do it. I don't want to go back. I'll do what it takes.'" Defense counsel told the jury that McGregor was out of jail and that he was a liar. Petitioner does not provide the Court with any explanation why he could not, through the exercise of due diligence, discover these facts in support of his claims.

This Court must dismiss any claim presented in a successive application that the Fifth Circuit has authorized to be filed unless Petitioner shows that his claims satisfy the requirements of § 2244. *See* 28 U.S.C. § 2244(b)(4). Because Petitioner has not met the requirements for filing a successive application under § 2244, his second, third, fourth, and fifth claims must be dismissed.

As a final matter, Petitioner requests discovery of "[a]ll documents, tapes, files, written reports, memoranda, notes, computer disks, or other written or recorded matter in the possession of the Grayson County Attorney, or city and county law enforcement relating to Michael Ray McGregor and Cynthia Maria Baxter" and "to its investigation of the case," as well as "[a]ll records of the Grayson County Jail reflecting when Michael McGregor and Mr. Murphy were inmates and where they were living during the relevant time period." (Doc. # 3). Under Rule 6 of the Rules Governing *Habeas Corpus* Cases, a Petitioner may seek to invoke discovery for "good cause shown." A court may grant discovery only "where specific allegations before the Court demonstrate that he is . . . entitled to relief. . . ." *Harris v. Nelson*, 394 U.S. 286, 300 (1969). Because the Court has ruled in favor of Respondent's Motion for Summary Judgment on Petitioner's first claim, and dismissed the remainder of Petitioner's claims, Petitioner has failed to demonstrate that he is entitled to relief. Petitioner's Request for Discovery will be denied.

The Court finds that there are no material issues of fact and that Respondent is entitled to judgment as a matter of law on the first claim raised in Petitioner's petition. Respondent's Motion for Summary Judgment will be GRANTED as to Petitioner's first claim. Petitioner's second through fifth claims will be DISMISSED. Petitioner's petition for writ of *habeas corpus* will be DENIED. An order and judgment to this effect will be entered separately.

SIGNED this 22 day of July, 2002.

```
                                    _____
                                    THAD HEARTFIELD
                                    UNITED STATES DISTRICT JUDGE
```